UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                              )
                                    )      Chapter 7
JOHN F. BINNINGER and               )
DIANN M. BINNINGER,                 )
                                    )      Bankruptcy No. 07-00203
     Debtors.                       )

### ORDER RE:  MOTION TO DISMISS PURSUANT TO § 707(b)(1)

This matter came before the undersigned on September 20, 2007 on U.S. Trustee's Motion to Dismiss.  John F. Schmillen appeared for U.S. Trustee and Francis Wm. Henkels appeared for Debtors John and Diann Binninger.  After the presentation of evidence and argument, the court took the matter under advisement.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF THE CASE

U.S. Trustee asserts that Debtors' Chapter 7 petition should be dismissed for abuse under 11 U.S.C. § 707(b)(1).  Alternatively, U.S. Trustee argues that the petition should be dismissed under § 707(b)(3)(B) (totality of the circumstances).  Debtors resist the motion to dismiss.

### FINDINGS OF FACT

Debtors filed a voluntary Chapter 7 petition on February 16, 2007.  Their original Form 22A indicated that the presumption of abuse did not arise because their annualized income of $49,815.00 was below the state median.  On Schedule F, Debtors list $28,439.76 of unsecured nonpriority claims.  U.S. Trustee requested further information to confirm the accuracy and completeness of Debtors' schedules.

Debtors filed their Amended Form 22A and supporting documents on June 6, 2007 (Exhibit 1).  The Amended Form 22A indicates that the presumption of abuse arises. Debtors' annualized income of $69,951.60 (Line 13) exceeds the state median of $ 54,599.00 (Line 14).  After allowed deductions, Debtors' projected disposable income over a sixty-month hypothetical Chapter 13 plan is $64,597.20 (Line 51).  This is sufficient to pay all Debtors' unsecured nonpriority claims.  Because Debtors' annualized income is above the state median and

their sixty-month disposable income exceeds $10,000, the presumption of abuse arises on their Amended Form 22A.

Debtors submitted a statement attached to their Amended Form 22A claiming that special circumstances exist.  The statement indicates that John Binninger's 2006 income was significantly higher than usual, due primarily to unlimited overtime, and was not representative of his current or projected income.  To support the claim of special circumstances, Debtors also submitted a summary of Mr. Binninger's income covering the years 1970 through 2005 and his May 15, 2007 paystub.  At the hearing, Mr. Binninger testified that his 2006 income was unusually high due to overtime and therefore should not be used in the Means Test.

U.S. Trustee's paralegal specialist, Jennifer Klein, testified that she prepared a Corrected Form 22A (Exhibit 2). She recalculated Debtors' current monthly income based solely on data from 2007.  She testified this was done to eliminate the impact of Mr. Binninger's unusually high 2006 income on the Means Test calculations.  Debtors' total current monthly income, based on 2007 data, is $5,068.99 (Line 12) and their annualized income is $60,827.86 (Line 13) on U.S. Trustee's Corrected Form 22A.

U.S. Trustee next recalculated Debtors' allowed deductions, making adjustments in:  mortgage/rent allowances (Line 20B), car ownership allowances (Lines 23 and 24), monthly tax obligations (Line 25), mandatory payroll deductions (Line 26), health care (Line 31), telecommunication services (Line 32), continuing charitable contributions (Line 40), and future payments on secured claims (Line 42).  Based on these calculations, U.S. Trustee concludes that Debtors' projected disposable income over the sixty-month hypothetical Chapter 13 plan is $30,234.60 (Line 51).  This amount is sufficient to pay all Debtors' unsecured nonpriority claims.  Because Debtors' annualized income is above the state median and their sixty-month disposable income exceeds $10,000, the presumption of abuse arises on U.S. Trustee's Corrected Form 22A.

At the hearing, Debtors contested U.S. Trustee's reduction of Line 26, Mandatory Payroll Deductions.  They claim that U.S. Trustee has not included Mr. Binninger's mandatory Railroad Retirement Board ("RRB") withholdings.  Debtors did not challenge any other changes in deductions that U.S. Trustee made.  The Court accepts U.S. Trustee's revisions for these deductions as accurate.

**707(b)(1) ANALYSIS**

BAPCPA took effect on October 17, 2005. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1406, 119 Stat. 23, 215 (2005). It made significant changes to § 707(b) of the Bankruptcy Code and implemented a new Means Test requirement for all debtors. 11 U.S.C. § 707(b)(2); In re Hayes, ___ B.R. ___, 2007 WL 2815983, at * 1 (Bankr. D. Mass. Sept. 26, 2007). Congress' intent was to ensure that debtors do not receive a Chapter 7 discharge if they have regular income that could go to pay a portion of their unsecured debt. In re Singletary, 354 B.R. 455, 458 (Bankr. S.D. Tex. 2006). The Means Test, through a required series of calculations on Form 22A, is designed to determine whether debtors have sufficient disposable income to fund a Chapter 13 plan. Id. at 459.

The Means Test first calculates the debtor's current monthly income (CMI). 11 U.S.C. § 707(b)(2). The CMI is historical in nature; it is the average of the debtor's actual monthly income during the six months prior to the petition filing date. 11 U.S.C. § 101(10A); In re Frederickson, ___ B.R. ___, 2007 WL 2752769, at *1 (B.A.P. 8th Cir. Sept. 24, 2007). If the debtor's CMI is below the state median income, the debtor "passes" the Means Test. 11 U.S.C. § 707(b)(7); Hays, 2007 WL 2815983, at *2; In re Campbell, 2007 WL 1376226, at *2 (Bankr. N.D. Iowa May 7, 2007).

If, however, the CMI is above the state median, Chapter 7 debtors must calculate their allowed deductions. 11 U.S.C. § 707(b)(2)(ii); Hays, 2007 WL 2815983, at *2. The allowed deductions include applicable IRS allowances for certain categories of expenses, actual expenses for other categories, and future payments on secured and priority unsecured claims. 11 U.S.C. § 707(b)(2)(ii)-(iv); Singletary, 354 B.R. at 461. The sum of these allowed deductions is subtracted from the debtor's CMI, to yield the debtor's monthly disposable income. 11 U.S.C. § 707(b)(2)(a)(1). The monthly disposable income is the amount of the debtor's income that is available to pay unsecured creditors. Singletary, 354 B.R. at 461.

The monthly disposable income is next multiplied by sixty. This is the applicable number of months in a Chapter 13 plan for debtors falling above the median state income. 11 U.S.C. § 707(b)(2)(a)(i); 11 U.S.C. § 1325(b)(4)(A)(ii); Frederickson, 2007 WL 2752769, at *3. If the debtor's sixty-month disposable income is below $6,000, no presumption of abuse arises. 11 U.S.C. § 707(b)(2)(A)(i)(I); Campbell, 2007 WL 1376226, at *2. If the amount is greater than $10,000, the presumption does arise. 11 U.S.C. § 707(b)(2)(A)(i)(II); Singletary, 354 B.R. at

3

460. If the amount is between $6,000 and $10,000, the presumption arises only if the sixty-month disposable income is greater than twenty-five percent of the debtor's nonpriority unsecured claims. 11 U.S.C. § 707(b)(2)(A)(i)(I); <u>Campbell</u>, 2007 WL 1376226, at *2; <u>Singletary</u>, 354 B.R. at 461.

If the Means Test calculations on Form 22A demonstrate that the presumption of abuse arises, U.S. Trustee is required to file either a motion to dismiss or convert or a statement describing why dismissal or conversion is not appropriate. 11 U.S.C. § 704(b)(2); <u>Hays</u>, 2007 WL 2815983, at *2. Once the presumption of abuse arises, the debtor may only rebut it by demonstrating "special circumstances that justify ... adjustments ... for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i); <u>Singletary</u>, 354 B.R. at 461. To demonstrate special circumstances, the debtor must itemize each adjustment of income or expense, provide documentation and a detailed explanation of each adjustment, testify about the adjustments under oath, demonstrate that there is no reasonable alternative to the adjustments, and have the adjustments impact CMI such that the presumption of abuse no longer arises. 11 U.S.C. § 707(b)(2)(B)(ii)-(iv); <u>In re Batzkiel</u>, 349 B.R. 518, 586 (Bankr. N.D. Iowa 2006); <u>Singletary</u>, 354 B.R. at 461. The burden of proof to rebut the presumption of abuse is on the debtor. 11 U.S.C. § 707(b)(2)(B)(i); <u>Batzkiel</u>, 349 B.R. at 586; <u>Singletary</u>, 354 B.R. at 462.

### CURRENT MONTHLY INCOME CALCULATIONS (LINES 11-13)

Debtors contend that special circumstances exist to rebut the presumption of abuse. First they claim that Mr. Binninger's 2006 income was unusually high and should not be used in the Means Test. U.S. Trustee acknowledges this by eliminating Mr. Binninger's 2006 wages from the Corrected Form 22A analysis. Ms. Klein testified that she based the current monthly income calculations solely on 2007 income information. Given the parties' tacit agreement on the issue, the Court accepts without deciding that there exist special circumstances requiring reduction of Debtors' current monthly income to $5,068.99, the amount calculated by U.S. Trustee at Line 12 of Corrected Form 22A (Exhibit 2). This adjusted amount is consistent with Debtors' income levels prior to 2006.

Debtors also argue that their current monthly income should be further reduced because Mr. Binninger will not receive overtime in the future and will have a change of income due to retirement in September 2008. Debtors fail in their burden of proof on these issues. The evidence, on the issue of overtime,

establishes that although overtime is not guaranteed, it has been occurring regularly for the last three years. Mr. Binninger is eligible for retirement in September 2008, but retirement is not mandatory. Debtors did not present evidence establishing income levels after retirement. Debtors have not demonstrated special circumstances that necessitate a further reduction to the corrected current monthly income.

The Court finds that Form 22A correctly establishes Mr. Binninger's current monthly income at $4039.78 (Line 11) and Debtors' total current monthly income at $5068.99 (Line 12). Debtors' annualized income is $60,827.88 (Line 13), which is higher than the applicable median family income of $54,599.00 (Line 14).

### MANDATORY PAYROLL DEDUCTIONS CALCULATION (LINE 26)

Debtors argue that U.S. Trustee's calculations of Mr. Binninger's mandatory payroll deductions (Line 26) are incorrect because they fail to take into account his mandatory RRB contributions. Ms. Klein testified that she included standard payroll taxes, i.e. social security, Medicare, and income taxes, on Line 25 (Taxes). She stated that she attempted to locate RRB withholdings on Mr. Binninger's paystubs, to include at Line 25 or Line 26, but was unable to do so. Ms. Klein further testified that she included only union dues in the mandatory payroll deductions (Line 26) because Debtors did not provide documentation of any other mandatory deductions.

Mr. Binninger testified that railroad employees are not eligible for social security and therefore are not subject to social security withholdings. Instead, as a railroad employee, he is subject to RRB withholdings. Those withholdings are mandatory.

The IRS regulations regarding RRB withholdings establish two tiers of RRB withholdings. IRS Internal Revenue Bulletin 2003-50, ¶ Background, available at http://www.irs.gov/irb/2003-50_IRB/arll.html#d0e706. Tier I is a social security equivalent and includes Medicare withholdings. Id. Tier II is essentially a private pension benefit. Id. The RRB Tier I withholding rate for 2007 is set at 7.65%, which is identical to the combined amount of social security and Medicare withholdings; the Tier II withholding rate for 2007 is 3.9%. Year 2007 Railroad Retirement and Unemployment Insurance Taxes, RRB News, Dec. 2006, at 1, available at http://www.rrb.gov/pdf/opa/pr0606.pdf.

As Tier I withholdings are assessed at the same rate as social security and Medicare, U.S. Trustee's calculations at Line 25 of Exhibit 2 are accurate.  The Tier II withholding is reflected on Mr. Binninger's paystubs but is not included in U.S. Trustee's calculations for Line 25 or Line 26 of Exhibit 2.  Based on Mr. Binninger's corrected current monthly income, his monthly Tier II withholding equals $157.55 ($4,039.78 x 0.039 = $157.55).  When added to the mandatory union dues of $73.75 per month, the amount for Mandatory Payroll Deductions (Line 26) equals $231.50.  As no evidence was presented reflecting other mandatory payroll deductions, the Court concludes that $231.30 is the correct amount for Line 26.

## CONCLUSION

Debtors' total current monthly income, for purposes of Form 22A, is $5068.99.  Applying the correct amount of $231.30 at Line 26 of U.S. Trustee's Corrected Form 22A (Exhibit 2), Debtors have total allowed deductions of $4745.08 (Line 47).  This results in monthly disposable income of $346.26 (Line 50) and a sixty-month disposable income of $20,775.60 (Line 51).  The presumption of abuse arises under § 707(b)(2)(A)(i)(II) because Debtors' sixty-month disposable income exceeds $10,000 (Line 52).  Furthermore, the sixty-month disposable income is sufficient to pay more than seventy percent of Debtors' unsecured nonpriority claims ($20,775.60 ÷ $28,439.76 = .7305).  Debtors have failed to rebut the presumption of abuse under § 707(b)(2)(B)(i).  Therefore, this case should be dismissed.

WHEREFORE, the U.S. Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1) is GRANTED.

FURTHER, Debtor shall have until November 2, 2007 within which to elect to convert to Chapter 13.

FURTHER, if Debtor fails to convert to Chapter 13 by that date, this case will be dismissed for abuse under § 707(b)(1) without further notice or hearing.

DATED AND ENTERED: October 19, 2007

/s/ Paul J. Kilburg
_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE